TABLE ROCK CHAPTER OF TROUT UNLIMITED AND CATAWBA RIVERKEEPER FOUNDATION, PETITIONERS v. ENVIRONMENTAL MANAGEMENT COMMISSION, RESPONDENT, AND DUKE ENERGY CORPORATION, INTERVENOR

No. COA07-1153

(Filed 15 July 2008)

**Environmental Law; Costs— attorney fees—substantial justification—special circumstances**

The trial court did not abuse its discretion by awarding attorney fees under N.C.G.S. § 6-19.1 to petitioners who successfully challenged the Environmental Management Commission's (EMC) denial of a petition for rulemaking to reclassify a river dam's tailwater to trout waters because: (1) EMC acted without substantial justification in denying the petition for rulemaking to reclassify the tailwater given the facts known at the time of such decision; and (2) no special circumstances existed that made the award of attorney fees unjust.

Appeal by respondent from order entered 5 June 2007 by Judge Beverly T. Beal in Burke County Superior Court. Heard in the Court of Appeals 20 February 2008.

*Southern Environmental Law Center, by J. David Farren and Geoffrey R. Gisler, for petitioner appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Francis W. Crawley and Assistant Attorney General Sueanna P. Sumpter, for respondent appellant.*

McCULLOUGH, Judge.

Respondent, North Carolina Environmental Management Commission ("the EMC"), appeals an order awarding petitioners, Table Rock Chapter of Trout Unlimited ("Trout Unlimited") and Catawba Riverkeeper Foundation, attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1 (2007). We affirm.

The relevant facts are as follows: The EMC is responsible for implementing state compliance with the Federal Clean Water Act and its federal implementing regulations. *See* 33 U.S.C.S. § 1313 (2007) and 15A N.C.A.C. 2A.0103(2007). On 2 April 2004, petitioners filed a petition with the EMC for rulemaking to reclassify eleven miles of the Catawba River's Bridgewater Dam tailwater ("the tailwater") to "trout waters."

Petitioners presented undisputed evidence, including a documented study conducted by the Wildlife Resources Commission that a year-round stocked brown trout population had been established and was successfully spawning to some extent in the tailwater and that a population of wild rainbow trout was also present. This was confirmed by the Division of Water Quality ("DWQ") staff member who testified to the EMC that the tailwater met the definition of trout waters. On 21 June 2004, the EMC issued a letter denying the petition to reclassify the tailwater. The letter did not provide a reason for the denial, but noted that the DWQ had been directed to study the issue further and that the EMC would review the proposed reclassification at specified future times.

On 19 August 2004, petitioners filed a petition for judicial review pursuant to N.C. Gen. Stat. §§ 150B-20(d) and -43 (2007), requesting that the trial court reverse respondent's final agency decision and order respondent to commence rulemaking procedures regarding reclassification of the tailwater. Duke Energy Corporation ("Duke Energy") was allowed to intervene in the matter.

On 19 July 2005, the trial court entered an Order reversing the final agency decision and remanding the matter back to the EMC to

commence rulemaking procedures. The trial court concluded that the EMC had "neither authority nor discretion to refuse to protect [the trout use] through proper classification." Further, the trial court concluded that in denying the petition for rulemaking, the EMC "violated its own rules" and acted in a manner that was "arbitrary and capricious."

On 17 September 2005, petitioners filed a motion for attorney's fees incurred with respect to the judicial review proceedings. The trial court found and concluded, in pertinent part:

3. . . . The facts known to the EMC at the time of its decision were sufficient to establish the trout population and the EMC could not have "reasonably believed" otherwise. Therefore, the EMC cannot be substantially justified in its position, which relies upon the EMC's misinterpretation of the law. The EMC could not have "reasonably believed" it could deny the petition for rulemaking and thus was substantially unjustified in its action.

4. [There are no] special circumstances that make such an award unjust.

On appeal, the sole issue before us is whether the trial court erred in awarding attorney's fees. Pursuant to N.C. Gen. Stat. § 6-19.1, the trial court may, in its discretion, award attorney's fees to a prevailing party contesting state action pursuant to N.C. Gen. Stat. § 150B-43 where the trial judge concludes that certain criteria are present. N.C. Gen. Stat. § 6-19.1. The trial court must conclude that: (1) the prevailing party is not the state; (2) the prevailing party petitions for attorney's fees within thirty days following final disposition of the case; (3) "the agency acted without substantial justification in pressing its claim against the party"; and (4) "there are no special circumstances that would make the award of attorney's fees unjust." *Id.* A trial court's determination that the state acted without "substantial justification" is a conclusion of law and is reviewable by this Court on appeal. *Whiteco Industries, Inc. v. Harrelson*, 111 N.C. App. 815, 819, 434 S.E.2d 229, 232-33 (1993), *disc. review denied, appeal dismissed*, 335 N.C. 566, 441 S.E.2d 135 (1994).

Respondent contends that the trial court erred by concluding (1) that respondent lacked substantial justification for its position, and (2) that there were no special circumstances that would make an award of attorney's fees unjust. We disagree.

In the case *sub judice*, the EMC, the party against whom counsel fees were sought, has the burden of proving substantial justification for its actions in denying the petition for rulemaking to reclassify the tailwaters as trout water, *Tay v. Flaherty*, 100 N.C. App. 51, 55, 394 S.E.2d 217, 219, *disc. review denied*, 327 N.C. 643, 399 S.E.2d 132 (1990), and further of showing the presence of circumstances which would make an award of counsel fees unjust. *Crowell Constructors, Inc. v. State ex rel. Cobey*, 114 N.C. App. 75, 80-81, 440 S.E.2d 848, 851 (1994) (*Crowell I*), *reversed on other grounds*, 342 N.C. 838, 467 S.E.2d 675 (1996) (*Crowell II*).

## I. Substantial Justification

First, we address respondent's contention that the trial court erred in concluding that respondent acted without substantial justification in denying the petition for rulemaking to reclassify the tailwater.

To demonstrate that it acted with substantial justification, within the meaning of N.C. Gen. Stat. § 6-19.1, an agency must show "that its position, at and from the time of its initial action, was rational and legitimate to such degree that a reasonable person *could* find it satisfactory or justifiable in light of the circumstances then known to the agency." *Crowell II*, 342 N.C. at 844, 467 S.E.2d at 679.[1]

Respondent contends that its decision to deny the petition for reclassification of the tailwater was reasonable because at the time of the decision, the agency did not have sufficient data demonstrating that the river was naturally supporting a sustainable trout population nor did they have sufficient data demonstrating that the tailwater satisfied the minimum standards required for classification as trout waters; however, this argument is based upon an unreasonable interpretation of the law, and is, therefore, not a substantial justification for the EMC's decision.

It is true that the EMC has discretionary authority to deny a petition for reclassification and request that further studies be conducted to obtain data and information required for determining the proper classification of the waters at issue, *see* 15A N.C.A.C. 2B.0101(b) (2007); however, N.C. Gen. Stat. § 143-214.1(b) (2007) provides that in

---

1. As a preliminary matter, we note that the EMC contends that the trial court applied an outcome determinative test instead of properly evaluating the facts known to or reasonably believed by the EMC at the time of its decision, as required by *Crowell II*. Given the trial court's express recitation of the proper test and reference to *Crowell II*, we find this argument to be without merit.

classifying a water body "each classification and the standards applicable thereto should be adopted with *primary reference to the best usage* to be made of the waters to which such classification will be assigned." *Id.* (emphasis added). "Best usage" is defined to include "[a]quatic life propagation and maintenance of biological integrity (including fishing, and fish)[.]" 15A N.C.A.C. 2B.0211(1) (2007).

Moreover, North Carolina's Antidegradation policy, as codified in 15A N.C.A.C. 2B.0201 (2007), provides that "existing [water] uses **shall be protected** by classifying surface waters and having standards sufficient to protect these uses." An existing use "mean[s] uses actually attained in the water body . . . **whether or not they are included in the water quality standards[.]**" 15A N.C.A.C. 2B.0202(30) (2007) (emphasis added). The EMC has defined the classification of "trout waters" to include waters that have "conditions which shall sustain and allow for trout propagation and **survival of stocked trout** on a year-round basis." 15A N.C.A.C. 2B.0202(65). Federal Regulations also mandate that "[w]here existing water quality standards specify designated uses less than those which are presently being attained, the State **shall** revise its standards to reflect the uses actually being attained." 40 C.F.R. § 131.10(i) (2007).

Given the express goal of classifying water in a manner to protect the propagation of aquatic life and the clear mandate to protect existing uses irrespective of current water quality standards, the EMC's conclusion that it had to first determine whether the tailwater satisfied higher water quality standards before reclassifying the water was based on an unreasonable interpretation of the law. Further, the Commission's decision to conduct further studies to determine if the trout were naturally self-sustaining was not based on a reasonable interpretation of the law, as the definition of trout water simply requires the survival of stocked trout on a year-round basis and does not require that such trout be naturally propagating. The petitioners presented undisputed evidence, including a documented study conducted by the Wildlife Resources Commission that the stocked brown trout population had been established in the tailwater and was successfully spawning naturally to some extent and that a population of wild rainbow trout was also present in the tailwater. This was confirmed by the Division of Water Quality staff who testified to the EMC that the waters in question met the definition of trout waters. Accordingly, the trial court properly determined that the EMC's decision was not substantially justified given the facts known at the time of such decision. This assignment of error is overruled.

**AZAR v. PRESBYTERIAN HOSP.**

[191 N.C. App. 367 (2008)]

II.  Special circumstances

Finally, we turn to the EMC's contention that the trial court erred in concluding that no special circumstances exist that make an award of attorney's fees unjust. First, the EMC contends that the award of attorney's fees is unjust because the petitioners failed to identify an immediate need for reclassification of the tailwater. This argument does not demonstrate a special circumstance, but simply rests on a misinterpretation of the law; as previously discussed, the petitioners produced sufficient evidence to invoke the EMC's duty to reclassify the tailwater.

Next, the EMC argues that the award is unjust because petitioners "agreed that there was a lack of sufficient data at the time to support reclassification." After reviewing the record, we conclude that this is a misstatement of petitioners' position. Accordingly, we conclude that the trial court acted within its discretion in finding that no special circumstances exist that make the award of attorney's fees unjust. This assignment of error is overruled.

The order of the trial court awarding attorney's fees incurred with respect to the judicial review proceeding is affirmed.

Affirmed.

Judges ELMORE and ARROWOOD concur.